No. 13.—GEORGE W. COOK, plaintiff in error, *vs.* TRAVIS A. D. WEAVER, defendant in error.

[1.] In the construction of wills, the intention of the testator should be the first and great object of inquiry. And this is to be sought for by looking to the whole will, and not to detached parts of it.

[2.] Every Court must determine for itself, what the intention of the testator is in the particular case before it, and that intention should be carried into effect, provided it be not unlawful.

[3.] Precedents, or adjudged cases, are of but little authority, and of dangerous application, in deciding upon the intention of a testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances.

Trover, in Upson Superior Court. Tried before Judge STARK, May Term, 1852.

This was an action of trover, brought by George W. Cook, against Travis A. D. Weaver, for the recovery of a negro man slave named Ben.

On the trial, the plaintiff read in evidence the last will and testament of Samuel Cook, admitted to probate in the Court of Ordinary of Jones County, on the 1st day of September, 1828, which " will" contained the following clauses :

" My will is, my wife Sarah E. Cook, after my death, shall have two negroes, Amy and Ben, during her life ; and after her death, to go to my youngest son, George Wm. Cook; and that my wife continue to live where she now does, and have charge of the place and negroes, belonging to the two youngest sons, Samuel and George W. Cook, which negroes I will hereafter name ; and she shall have all the profits arising from said lands and negroes, during her natural life or widowhood; and at her death or marriage, she nor her future heirs, shall have no claim to any thing of mine whatever. .

Provided my wife Sarah, shall at the same time, maintain, clothe and educate my two youngest sons, Samuel and George, and keep them at school, or studying some profession, until they arrive at age; and any profits arising above the maintenance is hers, provided at the same time, there shall not be more than two acres of land cleared on the place per year, nor more timber cut upon the land, than will keep up the outside fences.

My will further is, that my family keep as much together as possible, and that my carriage and horses be kept for the use of my family as it is advantageous to the family as long as considered so by my executors.    And my will further is, that my farm be from one-third to one-half sowed in small grain every year, and that my wife keep her two mules, Jinny and Pompey, for the good of the farm, together with all the necessary stock on the place for the use of said place, and she is not permitted to teach a school or keep a boarding house, further than to teach and board my own children, and whenever she marries again, she has no claim whatever.

She shall keep all the household furniture, necessary for the house and family.    And at the time Samuel P. Cook becomes of age, the said house and land where I now live, shall be equally divided by lot, sale, or otherwise, between him and George W. Cook, and my wife Sarah E. Cook, have no further claim on

Cook *vs.* Weaver.

Samuel P.'s part, but look to George W. for the balance of her maintenance."

" Item 8th. I give to my son, George W. Cook, four negroes, to wit: Sam Reizer, Jane, Hall and Sarah; and at his mother's death, two more, Amy and Ben. And when he becomes of age, he is to have half of the land and plantation where I now live, his mother having her life time on his part, provided she don't marry."

It appeared in evidence further, that, after the death of Samuel Cook, his widow Sarah E. Cook, took possession of the negroes, Ben and Amy. They were afterwards sold by the Sheriff of Jones County, by virtue of executions against Mrs. Cook, when the defendant in error became the purchaser of Ben.

Mrs. Cook subsequently intermarried with one John W. Shrapshire. George W. Cook arrived at full age in 1849, and instituted this action for the recovery of the negro man Ben.

Judge STARK, on the trial, held and charged the Jury, that under the will of Samuel Cook, his widow Sarah E. Cook, took a " life estate" in the negroes, Amy and Ben.

And this decision is assigned as error.

WORRILL, for plaintiff in error.

O. C. GIBSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The proper construction of this will is not free from doubt or difficulty, that is, whether Samuel Cook, the testator, intended his wife Sarah E. Cook, to have the two negroes, Amy and Ben, during the term of her natural life, or for her widowhood only. This is the only question for our consideration.

Take separate clauses in the will, and a plausible, not to say a probable interpretation, may be deduced in favor of either view of it. For instance, suppose we wish to establish that he intended his widow to have this property during her natural life. In the first clause of the will, he gives these two slaves express-

ly to her, during her life; and at her *death*, to go his youngest son, George W. Cook; and in the eighth item, at the close of the will, the same disposition is, made, by implication at least. For after giving to his son George W. four other negroes, which are mentioned by name, he adds, "and at his mother's *death*, two more, Amy and Ben."

With these clauses alone before us, isolated from the rest of the instrument, there would seem to be no doubt of the testator's intention to bequeath to his widow this property during her life.

Now, on the other hand, to show that the testator designed limiting his bounty to her during her *widowhood* only, we will extract other passages from this will. At the close of the very first item, we find this strong language: "And at her death *or marriage*, she nor her future heirs shall have no claim to any thing of mine whatever." Indeed, it seems hard to hold, in the teeth of a declaration so explicit, that the widow should take any thing more than a life estate in any of the property of the deceased, determinable upon her marriage. But this is not all. In support of the same idea, we find in a subsequent part of the will, this clause: "And whenever she marries again, she has no claim whatever."

[2.] Here, then, I repeat, are parts of the instrument which, if they stood alone, would seem clearly to sustain either construction which is sought to be put upon it. It becomes our duty then, to seek, through the whole paper, for the testator's intention, and to carry that intention into effect, provided it can be done without violating any rule of law.

[3.] And I will here take occasion to remark, that is in vain to look to the books for precedents to aid us in arriving at a correct conclusion as to the intention of the testator. This duty must be performed by every Court for itself, in each particular case.

After scanning this testament carefully, we believe that it was the intention of the testator, that his widow should have and hold Amy and Ben, for and during the term of her natural life. In the first place, he expressly gives these two slaves to her during her life, with remainder in fee to his son George. In the last

Cook *vs.* Weaver.

item of the will, the same disposition with which he set out, is distinctly repeated and recognized.

In the second place, in every part of the will, where the marriage of his widow is looked to, as the period beyond which her interest under the will will not survive, other property is given, having no connexion, however, with Amy and Ben. For instance, the emphatic language which I have already cited, that "at her death or marriage, she nor her future heirs, shall have no claim to any thing of mine whatever," follows immediately that provision which the testator makes for her to continue to live on the land, and to have charge of the plantation and negroes, belonging to the two youngest sons of the testator, Samuel and George W. and wherein he bequeathed to her all the surplus profits after maintaining and educating these two sons. And this gift is coupled with the expression which precedes the general clause of exclusion, in these words: "And she shall have all the profits arising from said lands and negroes, during her natural life, or widowhood." And then follows the broad declaration, that at her death or marriage, neither she nor her's, should have any thing further of his.

And again, before introducing the next general clause of exclusion, he directs that the family be kept together as much as possible; that a carriage and horses be retained for their use; directs the mode of cultivating the farm, as to division of crops, and desires that his wife's two mules, Jenny and Pompey, remain on the plantation, together with all the necessary stock, and then he subjoins as before: "And whenever she marries again, she has no claim whatever."

And finally, in the eighth item, we find this same uniformity of purpose manifested. For after devising to his son George W. half of the land whereon he lived, he gives to his mother a lifetime interest in this moiety: "provided she don't marry."

We see then, that it is only in connexion with *other* interests, bequeathed to his wife in the will, that the limitation to her *widowhood* appears to be annexed; but in that relation to Amy and Ben, no such purpose is indicated. If such was the meaning of the testator, why did he not say so? Why did he not affix *mar-*

*riage*, as a limitation to the gift of these slaves, as he did to every other interest? To put this construction upon the gift of Amy and Ben, why did he make it necessary to transpose the clause in the will, to change their collocation? How natural, that the testator should in the first item, if such was his intention, have said that, "it is my will that my wife Sarah E. Cook, after my death, shall have two negroes, Amy and Ben, during her life *or widowhood*, and at her death *or marriage*, to go to my youngest son, George W. Cook." And then again, in the eighth item, after giving to his son George W. Cook, the four negroes specified, and "at his mother's death *or marriage*, Amy and Ben." But the words *italicised*, are not in the will. Their absence from these clauses and insertion in all the rest, where any other legacy is given to the widow, leaves but little room to doubt upon the subject.

Seeing then as we do, from the paper appended to the will by the testator, and proven as a part of it, that valuing the two negroes, Amy and Ben, at $700, which would be a pretty high price for a life estate in these slaves, that this estimate was necessary in the opinion of the testator himself, to do her justice in the division of his property, we feel disinclined, upon a doubtful construction, to curtail her interest.

Judgment affirmed.