GIBSON *et al. vs.* HARDAWAY *et al.*

A testator made the following bequest : " I give and bequeath to my daughters, Dora W. and Martha O. Hardaway, the tract of land on which I now reside (describing it), and also another tract of land (describing it). Both tracts together I value at $11,000.00. I also give to each of my two daughters one bedstead, bed and bed furniture, which will be four hundred dollars each, more than I have given to my son, Wm. M. Hardaway ; and, as I wish to (make) them all three equal, I direct my executors to pay over to my son Wm. M. Hardaway, four hundred dollars from other parts of my estate. I give the above named legacies to my daughters free from the debts, liabilities, or control of any husband they may have ; and should either or both of my two daughters above named die without child or children, then all the legacies given them in this item shall vest in and be considered as my estate : "

*Held,* that the words in the above item do not create an estate tail in the two daughters, but convey a fee simple estate to them defeasible upon their dying without child or children ; that such is the intention of the testator, as gathered from the above item, and nothing inconsistent therewith appearing elsewhere in the entire will, the construction thereof by the court below is right.

Wills. Estates. Legacies. Before Judge POTTLE. Warren County. At Chambers, December 1, 1881.

E. C. Hardaway died, leaving the following will :

" STATE OF GEORGIA,—Warren County :

In the name of God, Amen, I, Edw. Cody Hardaway, considering the uncertainty of mortal life, and being of sound mind and memory, deem it right and proper, both as regards myself and family, that I shall make a disposition of the estate with which a kind Providence has blessed me, do therefore make this my last will and testament, hereby revoking all others heretofore made by me, and divided as item six of this will directs.

Item first—I direct that my body be buried in a Christianlike manner, suitable to my circumstances in life and condition, at the place where I now reside, where my wife is interred ; my soul I trust shall return to God who gave it, as I hope for eternal salvation through the merits and atonement of a blessed Lord and Savior Jesus Christ, whose religion I believe.

Item second—I will that all my just debts be paid by my executors, hereafter named.

Item third—I give George T. McCord in trust for his two children, Eve McCord and Clennard Hardaway McCord, my grandchildren by my deceased daughter, Mary V. McCord, wife of George T. McCord, seventeen hundred dollars in a note which I hold against him, which he is to invest in lands, or some good bonds or stocks, for the sole use of the children above named. I also give to my two grandchildren before named thirty shares of Georgia Railroad stock, which I wish my executors to divide equally between them, when either of them marry or become of age. If either of them should die without child or children, then all I give in this item shall go to and be the property of the one living, or to the descendants of the one living. Should both of them die without child or children, then all I give in this item shall revert back to and become a part of my estate.

Item fourth—I give and bequeath to my son, William Mark Hardaway, five thousand one hundred dollars, and also one bedstead, bed and furniture, which I have heretofore advanced him and for which I have his receipt, and that shall be considered as a portion of his part of my estate advanced to him.

Item fifth—I give and bequeath to my daughters, Dora W. Hardaway and Martha Ophelia Hardaway, the tract of land on which I now reside, containing (673) six hundred and seventy-three acres, more or less ; and also the tract of land formerly belonging to the estate of George W. Hardaway, in this county, containing (496) four hundred and ninety-six acres, more or less. Both tracts of land together I value at ($11,000) eleven thousand dollars. I also give to each of my

two daughters one bedstead, bed and bed furniture, which will be four hundred dollars each more than I have given to my son, William Mark Hardaway ; and as I wish to them all three equal, I direct my executors to pay over to my son, William Mark Hardaway, four hundred dollars from other parts of my estate. I give the above named legacies to my daughters free from the debts, liabilities or control of any husband they may have, and should either or both of my two daughters above named die without child or children, then all the legacies given them in this item shall vest in and be considered as my estate.

Item sixth—It is my will that all the remaining parts of my property not before bequeathed in the foregoing items,—notes, accounts, household and kitchen furniture, horses, mules, cattle, hogs, and plantation tools, etc., shall be equally divided, or sold and procceds equally divided between my son, William Mark Hardaway, and my two daughters, Dora W. and Martha Ophelia Hardaway. The devise in this item includes a tract of land in McDuffie county known as the McDuffie or Fleming tract of land, containing (172) one hundred and seventy-two acres, more or less. The money arising from the above mentioned sales, which will go to my daughters, shall be invested in lands, stocks or bonds by my executors or trustees, if have trustees, for their sole and separate use.

Item seventh—I will that one acre of land, where my wife and daughter and others are now interred, shall be reserved and held forever as family burying ground.

Item eighth—I appoint my son, William Mark Hardaway, and Marshall Wellborn, my executors to carry out and execute this will and testament. This will is written on two sheets of paper, attached together by a band of ribbon."

(Dated July 24, 1877, and regularly attested.)

Dora W. Hardaway intermarried with Gibson, and filed her bill for a construction of this will, and by amendment Martha Ophelia Neal (formerly Hardaway) became a party complainant. William M. Hardaway, and George T. McCord, as trustee and next friend of his minor children, Eve and Edmund, were defendants. The complainants claimed that the fifth item of the will sought to create an estate tail, and thereby an absolute fee simple title vested in them. The defendants insisted that complainants took a fee simple estate defeasible upon dying with-

out children.  Judge Pottle, to whom the case was submitted, rendered the following decision :

" There is but one question in this case for the decision of the court, and that is the construction of the last will of Edmund Hardaway. Complainants invoke a construction, and the defendants, by a crossbill, do the same thing.  On the part of the complainants, it is contended that by the will an absolute title to the two tracts of land described in the 5th item vested in them, or in other words, that by the terms of said will an estate tail was created in the two daughters."

(The items of the will were then copied.)

"This is the whole will.  This testament must be construed as a whole to get at the intention of the testator.  It speaks for him though he is dead.  His thoughts and intentions must be gathered from everything within the "four corners" of the instrument, and that intention must prevail unless it contravenes some rule of law.  Do the words in the 5th item show an intention that the reversion should be dependent upon an indefinite failure of issue ?  It will be observed that there is no life estate created in the two daughters.  The devise is to them absolutely, and if either or both of them die without child or children, then the reversion arises.  There is no express estate given to the children in case there should be any.  Now what title passed out of the testator ?  Most obviously a fee in the two daughters, to be divestupon their dying without child or children.  It is argued that the words child or children are synonymous with issue, and that the reversion only attaches upon an indefinite failure of issue.

This case opens up a wide field of investigation.  The well is deep, but fortunately for us we have something to draw with.  Great minds have dropped their buckets to the bottom, and have brought water of the best quality.  It is true that some of it is not very *clear*, but there is an ample supply.  Counsel in this case have displayed a commendable amount of industry and learning, and have afforded me great help in coming to a conclusion.  It has been well said by the late Chief Justice of our own supreme court, that precedents and adjudicated cases are of but little use in such cases like this ; they serve to bewilder and perplex.  If a case could be found exactly similar, it would afford aid to the court ; but that is impossible.  We have seen that the devise was absolute in the two daughters, defeasible upon their dying without child or children.  It is unlike the Wilde case, and unlike the case cited in 3d *Kelly*, and we have seen that there is no limitation over to the child or children.  Whether or not an estate tail was intended, so that the fee should vest in the first taker, we must look to the time when the event is to happen.  If the failure was to be at the death of

the first taker, no indefinite failure of issue can be supposed. Lewis, in his excellent treatise on Perpetuities, says : 'There is not to be found any instance of property being given to a person in fee, with a limitation over in case he should die without leaving issue at the time of his death, in which the previous fee has been cut down to an estate tail by force of the limitation over.' Page 153. It cannot be questioned but that the primary meaning of the word child or children is immediate descendants or remote offspring, unless there are other words in the instrument requiring a different meaning. There are cases where children have been held to mean remote descendants, but in those cases there will be found other words enlarging their meaning. But it is unnecessary here to look into the meaning of the words. We come back to the proposition as to the time when the limitation over is to take place ; that event must determine the question of remoteness. In Hughes *vs*. Sayre, P. W. R., this case is reported : One having two nephews and nieces, A and B, devises his personal estate to A and B, and if either die without children, then to the survivor. Held to be a good devise.

The chancellor gave judgment that the word children, when unborn, had been in a case of a will construed to be synonymous with issue, and therefore would create an estate tail ('Wilde's case, 6 Coke), and if the word children was understood to be the same with issue in the present case, then the devise of the personal estate upon a death without issue would be void ; but here the words dying without children must be taken to be children *living at the death of the party*. Page 534. But let us see if this inquiry cannot be solved by the words themselves: "Should either or both die without children, *then* the legacies given them shall vest in my estate." To what period of time does the word "then" refer ? It must mean, and can mean nothing else but the time when the daughters, or either, should die without child or children. He manifestly meant this : I give to my two daughters a fee simple in this land, and when they die without any child or children living at the death of the mother, that estate shall cease. Such was his disposition scheme. (See *Roberts and Wife vs. West*, 15 *Ga.*, 123. See also the case of *Sanford vs. Sanford*, 58 *Ga.*, 259.) The word "then" as it occurs in that devise, and the meaning attached to it, is expressly commented on. Judge Bleckley says the word *then* as used in this will is an adverb of time, and refers to 16 *Ga.*, 557 and 617. In that case Judge Bleckley draws the most obvious distinction between that case and the case in 3 *Kelly* so much relied upon by counsel for the complainants. In that case, as he justly observes, the will coupled the children with the ancestor directly. In the Brantly case (3d *Kelly*) the words were, "to William Brantly *and his children*," and in case

of his death without having children, the property reverted, 3 *Kelly*, 555. The act of 1853-4 seems to decide the question as to the time when the limitation over begins. Suppose the words "without child or children" should be construed to mean without issue, etc. This act provides that such limitations or terms shall be held and construed to mean a definite failure of issue; that is to say, a failure of issue or heirs at the time of the death of the first taker. This act is a pretty close transcript from the act of 1st Victoria. In commenting on that, Lewis on Perpetuities, says: "Words imparting a failure of issue are by the new law to be construed to mean a failure of issue in the life time, or at the death of such person, unless a contrary intention appears," etc. Estates tail being prohibited by our law, none is raised by implication, and courts cannot presume that a testator intended to violate that law. Are there any words or clauses in this will to be taken in connection with item 5 which go to show that the testator meant to give his property to a class which has successvion from generation to generation till the blood is exhausted? Under the rule in Shelly's case that would be an express entail. Counsel for complainants refer to item 3d as supporting words. These words refer to the legacies given to his grandchildren. In that item he made cross remainders in favor of the survivor, in case of death without children, or to the descendants of children. I cannot see how that throws any light on what comes after; and if they did the words "descendants of children" are qualified by the succeeding words, and *then* "the adverb of time" shows the time when the limitation over was to take effect, or rather the reversion takes effect. In *Burton vs. Black*, 30 *Ga.*, page 640, Judge Stephens, who delivered the vigorous opinion of the court, said great care should be taken in adhering strictly to the description of the persons who are to prevent the property from going over. Now can there be any doubt as to who the persons were in this case who were to prevent the reversion? The class of persons are child or children *then* living *at the death of the daughters.* If such a class is not in issue *at that time,* then the reversion begins. It may be, and likely it would be held, that grandchildren would answer the description of children for the purpose of preventing reversion, but that assumption does not affect the question as to the time when the reversion begins. If the premise be correct that the *children* were the class which would prevent the reverter, and that the death of the daughters was the time when the estate should terminate, then it is immaterial who are the reversioners in fee. In this connection the case of O'Byrne is cited in 61 *Ga.* Reps. In that case it was decided that "lawful issue" meant children, and one reason given by the Chief Justice was that the limitation over was to certain persons named in the

will, and that the daughter took as purchaser and not by limitation. It will be again observed that the case before us is not one with a remainder over, but a case with a reversion upon the happening of a certain contingency.

A case somewhat in point is the case of Doe, ex. dem., of King *vs.* Frost, reported in 3 B. & Adolphus, 546. A testator, having a son and daughter, and the latter having several children, devised to his son W. F. in fee, and if he should have no children or child or issue, the said estate was, on the decease of W. F. to become the property of testator's heirs at law, subject to such legacies as W. F. might leave to the younger branches of the family. It was adjudged that W. F. took under this will an estate in fee, with an executory devise over to the person who, on the happening of the event contemplated in the will, should be the heir at law of the testator, and it seems that the charge upon the estate did not alter the construction of the words of limitation. This was a case where no person was named, but whoever chanced to be the heir at law took the devise. An estate in reversion is the residue of an estate, usually the fee left with the grantor or his heirs after the determination of a particular estate, which he has granted out of it. The rights of the reversioners are the same as with those of a vested remainderman in fee. Code, §2263. By this will, on the happening of a contingency, namely, the death of the daughters without child or children, the property given them was to vest in and be considered as his estate. There is no remainder over, but the destruction of an estate in his daughters, at their death without children. For that purpose the title passed out of testator. The class of persons which he had in his mind were not a progeny, to take *ad infinitum*, but such a class as should be his representatives when this event happened, upon which the vesting depended, then the devise ended and the reversion began, the fee being still in the deviser and his heirs, the rights of the reversioners being the same as a vested remainderman in fee. It would seem that if the grant were to cease at the death of the daughters without children, this property would fall in the residuum of the estate, and pass under the residuary clause, making the two daughters and W. M. Hardaway tenants in common, or there would be an intestacy as to that. Every conveyance shall be construed to convey a fee unless a less estate is mentioned and limited. Code, §2248. Here a fee is expressly created and a less estate is carved out at the death of the daughters, without child or children, vests, in the language of the judge in King *vs.* Frost, in those who should happen to be the heirs at law; and the mind of the testator was evidently looking to his son or the grandchildren, who were the only other children of his loins. The reversionary clause in this will negatives any

thought of a contemplated indefinite failure of issue in the daughters. His scheme undoubtedly was to keep the property in the family. His children were the objects of his bounty, and instead of looking down to a remote period of time through successive generations of the blood of his daughters, he resolved that when they died childless it should remain just as it did before the grant passed out of him. It is clear that he did not contemplate that it should pass with the residuary clause, but such may be the legal effect. In *Dillard vs. Ellington* 57 *Ga.*, the court say : 'When a reversion may be incident to a specific devise, the testator may be supposed not to have contemplated it ; but when it must be incident, and cannot possibly be otherwise, the presumption should be that he had it in mind, and that language used by him sufficiently comprehensive to dispose of it was used without that intent.' However, I only decide what the pleadings call on me to decide. I, therefore, order and decree that no estate tail was created by this will, and that the estate of the two daughters, Dora W. and Martha Ophelia, as intended by the will, was a fee simple estate in the two tracts of land, defeasible upon their dying without child or children."

To this decision complainants excepted.

SEABORN REESE; H. C. RONEY; GIBSON & BRANDT; HAWKINS & HAWKINS, for plaintiffs in error.

W. D. TUTT; C. W. DuBOSE, for defendants.

JACKSON, Chief Justice.

The decision in the syllabus, written out by myself, expresses the judgment of the court on the item in the will in controversy as clearly and succinctly as I am able to make it. The entire will reported above contains nothing going to show any intention tending to create an estate tail, and the opinion of Judge Pottle, also reported, is so full that it is deemed unnecessary to discuss the question at issue further. It may be added that, by our statute, before an estate tail can be held to be created by any words in a will, those words must show such intention in the testator's mind very clearly—I had almost said beyond a reasonable doubt. The language of the

law is, "estates tail being illegal, the law will never presume or imply such an estate." Code, §2250. All implication is expressly excluded, and all argument based on any part of the will to raise an implication is without force. There is nothing in this will which would even raise such an implication, so far as we can see. The best that can be said for the word "then" is that it may probably mean "thereupon or in that event," as contended for by plaintiffs in error; but it is also certain that it may mean "at the time" of the death of the daughter. The latter meaning makes the will legal, the former illegal. If therefore the intention in the use of the word were doubtful, we should be forced to give it the legal meaning to carry out the statute. But the natural, plain, simple construction is that the "then" used here is an adverb of time, and means at the death of the daughters. Then, at that time, when "either or both of my said daughters above named die without child or children, then all the legacies given them in this item shall vest in and be considered as my estate." Should either die leaving no child then the fee simple is defeated and the reversion takes place. So that the estate is a fee simple estate defeasible upon the daughter dying without child or children.

Mark the difference between the third and fifth items of the will. In the third the language is, "should both of them" (the grandchildren) "die without child or children, then all I give in this item shall revert back to and become a part of my estate," whereas in the fifth, the item immediately in review, the language is "should either or both," showing a remainder to the surviving grandchild in the third, without reference to the prior clause in that item, but none in this, the fifth item, to the surviving daughter.

The son named in the fourth item, is then, on the death of either daughter, to share with the surviving sister, and the grandchildren named in the third item also, if

they or their representatives be alive ; but not until both children die without any child of either surviving, are the other children of the testator to have any interest in that third item.

The entire scheme seems clear to keep the property in the blood of the testator just as long as the law will permit, but no longer. A time certain and within the limit of the law is fixed when all conditions and contin gencies and defeasances cease, and the fee which passed at the death of testator defeasible at a certain time becomes fixed forever, either in some surviving descendant at the death of the legatee, or by reversion into the testator's heirs-at-law.

Be this as it may, it is enough to say that by this item no estate tail passes, but an absolute fee, defeasible upon the death of the daughters without child or children then surviving.

Judgment affirmed.

Cited for plaintiffs in error : Redfield on Wills, 20 ; 12 *Ga.*, 47 ; Code, §§2248, 2301 ; 1 Jar. on Wills, 313, 323, 324 ; 2 Williams on Exr's., 760, 711 ; 2 Jar., 179, 171, 183, 185, 186, 231, 232 ; Redf. on Wills, 20, 15 ; 33 *Ga.*, 179 ; 30 *Ib.*, 640 ; 20 *Ib.*, 811, 818 ; 30 *Ib.*, 641 ; 58 *Ib.*, 23 ; 3 *Ib.*, 562 ; 4 *Ib.*, 383 ; 15 *Ib.*, 125 ; 17 *Ib.*, 285 ; 16 *Ib.*, 557, 617 ; 21 *Ib.*, 380 ; 61 *Ib.*, 77.

For defendants : 2 Blacks., 109, 110 ; Code, §§2250, 1761 ; 3 *Kelley*, 551 ; 4 Kent, 9, 10 ; 30 *Ga.*, 638, 707 ; 23 *Ib.*, 395 ; 1 Wash. on Real Estate, 78, 79 ; 20 *Ga.*, 699 ; 8 *Ib.*, 385 ; 17 *Ib.*, 280 ; 21 *Ib.*, 377 ; 28 *Ib.*, 378 ; 33 *Ib.*, 341 ; Code, §2395 ; 12 *Ga.*, 357.