KIMBROUGH, administrator, *v.* SMITH, administrator.

A devise of a life-estate, made in distinct terms in a prior item, will not be enlarged into a fee-simple estate by the general language of a subsequent item, where the language and the general context of the will do not clearly and plainly indicate such to be the testator's purpose and intent.

Submitted April 23,—Decided July 12, 1907.

Complaint for land. Before Judge ˙Freeman. Troup superior court. June 22, 1906.

S. A. Smith as administrator de bonis non cum testamento annexo of John A. Smith, filed his complaint for land against Kimbrough, administrator of Thomas Wesley Smith; and the case was submitted to the judge without a jury, under an agreed statement of facts. In accordance with the terms of this agreement he subsequently rendered his decision, which was in favor of the plaintiff, and the defendant filed the present bill of exceptions complaining of that decision. The agreed statement of facts shows that John A. Smith died in 1880, testate, and that his sons S. P. and Thomas Wesley, who were named as executors in the will, duly qualified and administered the estate, and were discharged in 1883. The third item of the will is as follows: "I give and bequeath to my beloved wife Mary Smith, and to my son Thomas Wesley Smith, jointly, the following lots and fractions of lots of land [being the

land sued for in the present case] ; the lands with their appurtenances herein mentioned are to be held and the rents or profits thereof enjoyed jointly by them; if one dies before the other, the survivor shall have the share of the one who dies, and at the death of both said property shall revert to my estate to be equally divided among my heirs at law, at that time in life; and as the mills situated on the lands thus disposed of require repairs, I give my wife and son, Thos. Wesley, five hundred dollars for the purpose of making such repairs." The fourth, sixth, and seventh items of the will make bequests to his other children of lands therein specified, the estate in each instance being without any limitation. Item five gives certain land to his sister for life, with remainder to a named daughter. Item eight sets out that "In making the above and foregoing bequests it is distinctly to be understood that in every instance the property so bequeathed is to go to the legatees mentioned and their lawful heirs, and in no instance to be subject to the debts of said legatees, and the same ruling to apply to the bequests that are to be made in the items that follow, and I value the lands thus bequeathed as follows, to wit: those to my wife and Thos. Wesley jointly $6,000, to Nannie White $3,500, to Sarah E. Cleveland $3,942 [these two being daughters], and to Samuel P. Smith at $3,805." Item nine is, that "All the balance of my property of each and every description, whenever and wherever it may be or consist of, I desire and direct that the same may be divided and distributed among my heirs at law hereinbefore mentioned in the foregoing items, so that the distribution may be equal, taking as a basis upon which to estimate the values I have placed on the realty bequeathed, counting my wife and Thos. Wesley as two shares—and it is to be distinctly understood that the bequest to my wife is in lieu of dower." The residue of the estate, immediately after the death of the testator, was appraised at $35,000. These legacies were assented to, and the legatees took possession of the lands bequeathed to them. Thomas Wesley was born in 1832, and from his childhood had lived with his father and mother, never having married, and was so living at the time the will was made, and at the testator's death. The other children had married and with their families were living apart from the testator. Thomas Wesley continued to live with his mother unmarried till her death in 1884, but later in 1894 he married. He continued to live upon

the land devised to himself and his mother after her death, and till his death, which occurred on June 13, 1904. He left surviving him a wife and one child, who continued to live on the place after his death; and this suit is brought by the administrator de bonis non of his father's estate, against the administrator of Thomas Wesley Smith, to recover this land.

*F. M. Longley,* for plaintiff in error. *J. R. Terrell,* contra.

EVANS, J. The solution of the case presented by this record depends upon the character of the estate, whether fee simple or for life only, which Thomas Wesley Smith took in the lands devised in the third item of his father's will. If no other considerations entered into the construction of this item beyond defining the plain and unambiguous language of the testator according to its obvious legal effect, no difficulty would be experienced in declaring the nature of the estate therein created. With almost technical precision the testator devised to his wife and son, Thomas Wesley, an estate for their joint lives, with survivorship, and after the death of the survivor a reversion of the land devised, to his estate, to be distributed among his heirs at law living at the time of the death of the survivor. But the plaintiff in error insists that the eighth item of the will is irreconcilable with item three, and that the life-estate created in the third item became absolute under the eighth item, and vested in Thomas Wesley Smith an absolute fee-simple estate upon the death of his mother. The Civil Code, § 3346, provides that "Where there are inconsistent provisions in the same will, the latter must prevail." Before a posterior provision shall be given the effect of nullifying a devise previously made in the will, the conflict between the two provisions must be irreconcilable. A subsequent provision which diminishes a precedent gift, as by cutting down to a life-estate a prior devise, is not so far conflicting and irreconcilable with that gift as to be, in a legal sense, repugnant thereto. *Broach* v. *Kitchens, 23 Ga.* 515; *Sheftall* v. *Roberts, 30. Ga.* 453; *Vaughn* v. *Howard, 75 Ga.* 285. In these cases the language of the posterior clause reducing the estate was in express terms, and not in general language. When the words of the will in the first instance distinctly indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provision which is inferential, and which is not equally as distinct as the former. 30 Am. & Eng. Enc. L. (2d ed.) 687; 1

Jarman on Wills, *438. The reason underlying this principle is equally applicable to the converse of the proposition, to wit: that where the prior devise of an estate less than a fee is made in distinct terms, it will not be enlarged into a fee by the general language of a subsequent item, unless the language and general context clearly and unmistakably discloses such to be the testator's purpose and intent. It is familiar law that the whole will is to be taken together, and operation to be given to every part of it, if possible, and no part should ever be rejected because of conflict with another part except where the repugnancy is so palpable that both items can not be given effect. The language relied on in this case to create the repugnancy is the statement in the eighth item that the property bequeathed in the previous items "is to go to the legatees mentioned, and their lawful heirs, and in no instance to be subject to the debts of said legatees." It is quite evident that the testator was of the opinion, from the language he used, that he could devise property to his children, and at the same time exempt it from liability to their debts. The eighth item does not remotely suggest the testator's intent to modify or annul the provisions as to survivorship between his wife and Thomas Wesley; and there could be no survivorship except that a life-estate was created. We would be doing violence to the clear and distinct purpose manifested by the testator in the disposition of the land devised in the third item, to hold that the clear and distinct gift of a life-estate was to be converted into a fee-simple estate by the general language employed in the eighth item of his will.

Plaintiff in error further contends that the testator discloses an intention, in the eighth and ninth items of his will, to make an equal distribution among his heirs at law; that the real purpose of the testator was to divide his estate into five equal parts, giving two to his wife and Thomas Wesley, and to the three other children each an equal share. We gather from the whole will that the testamentary scheme did not comprehend equality in the estates devised. A construction which would enlarge the estate granted to Thomas Wesley in the third item, into a fee simple, would destroy that equality for which the plaintiff in error so earnestly contends, since Thomas Wesley, if he should survive his mother, would be given a much larger share than would pass to the other children under the terms of the will. It would seem that the

testator had more in mind equality in present interest than equality of the estate devised to his several children. In his estimate of the land devised to the different legatees he values the land without reference to the estate created therein, and for the purpose of making an equal division of the residuum on the basis of such valuation. The will itself is demonstrative that this was the general testamentary scheme, and presents no ambiguity. But even if we were of the opinion that the will raised an ambiguity, the attendant circumstances of the testator and his family, appearing in the agreed statement of facts, illustrate that the construction we place upon it is the correct one. The precise date of the will does not appear in the record, but it was probated in 1880. At that time Thomas Wesley was forty-eight years of age, living with his mother, and unmarried. The other children were married and living apart from the testator at the time of his death. It is easy to infer from these circumstances that the testator did not believe that his son Thomas Wesley would ever marry, and he desired the land specifically devised to go to his lineal heirs upon the death of the survivor named in the third item of his will. The residuum of the estate was appraised at $35,000, approximately double the value of the land specifically devised. The record is silent as to whether this residuum consisted of personalty or realty. Both his wife and Thomas Wesley took their shares of this residuum without limitation. While we are of the opinion that the will is unambiguous, we advert to these attendant circumstances of the testator and his family, which were before the trial judge, only to show that the construction which we have given is consonant with those circumstances at the time the will was executed. The case was tried by the judge without a jury, by consent, upon an agreed statement of facts; and we agree in the judgment of the trial judge that Thomas Wesley Smith's estate in the lands, devised in the third item of the will determined upon his death.

*Judgment affirmed. All the Justices concur.*