CRUMLEY, by next friend, *et al. v.* SCALES *et al.*

A testator who had four daughters, 'all of whom except one had children at the time the will was executed, devised to the other three daughters specific lots, in language clearly creating in them life-estates and remainders to their children, respectively, upon their deaths. To two of these daughters, in separate items of the will, he gave two other lots "absolutely and in fee simple," and no language was used indicating that the property so given was to go to any one upon death of the devisee. To the daughter who had no children he devised a lot for and

during her life, and provided, "but if she should leave no child or children, to go to her sisters, . . or their children, in three equal shares." By item 12 of the will the testator disposed of the residuum of his estate as follows: "I give, devise, and bequeath, absolutely in fee simple, all the balance of my property which I may own at the time of my death, both real and personal, and wherever located, in equal shares to my four daughters, Carrie M. Crumley, Mary Z. Scales, Fannie A. Wright, and Maggie S. McBurney. Should any of my said children die leaving child or children, such child or children shall take the share of their deceased parent." *Held,* that under the 12th item of the will, all four daughters having survived the testator, each of them was entitled to her respective share therein devised in fee simple, and their children did not, under the will, acquire any interest whatever in the property so devised.

NOVEMBER 15, 1910.

Petition for injunction. Before Judge Pendleton. Fulton superior court. May 21, 1910.

Certain minors, by their next friend, filed their petition, making substantially the following allegations: Maxwell R. Berry died leaving a will, the 12th item of which is as follows: "I give, devise, and bequeath, absolutely in fee simple, all the balance of my property which I may own at the time of my death, both real and personal, and wherever located, in equal shares to my four daughters, Carrie M. Crumley, Mary Z. Scales, Fannie A. Wright, and Maggie S. McBurney. Should any of my said children die leaving child or children, such child or children shall take the share of their deceased parent." The plaintiffs are minor children of the daughters named in the above-quoted item, except Maggie S. McBurney, who has no children. A copy of the entire will was attached to the petition. The property disposed of under this item consisted of real and personal property of great value, and plaintiffs took an interest therein "as contingent remaindermen and as executory devisees." The daughters named in the item above quoted claim to own the property in fee, and are asserting dominion over and ownership of said property, denying that the plaintiffs have any interest therein. They have sold some of the realty, and have made deeds undertaking to convey the fee thereof, and are offering other portions thereof for sale. "The said defendants are exercising acts of ownership over the personal property covered by said item 12, and propose to sell and dispose of the same and convert the proceeds thereof to their own use and in no wise to account to your petitioners for their interest therein, and deny the right of your petitioners to any inter-

est therein, so that said personal property may be disposed of by the life-tenant, and lost to your petitioners." The sales referred to will cast a cloud upon the title of plaintiffs, and cause a multiplicity of suits and circuity of actions. Plaintiffs pray that it be decreed that they have an interest in the property disposed of in said item 12, "as contingent remaindermen and as executory devisees," and as such are entitled to have the defendants retain possession of and preserve the property during their respective lives, for the benefit of petitioners; and that the defendants be restrained from selling or otherwise disposing of any of such property. Certain items of the will disposing of property of the testator, and the only provisions of the will necessary to be considered in making a decision in the case, are as follows:

"Item 1. I give, devise, and bequeath to my daughter, Carrie M. Crumley, my storehouse and lot known as No. 6 Marietta street in the City of Atlanta, Georgia, being one fourth of the lots known as Nos. 6, 8, 10, and 12 Marietta street in said city. To have and to hold said property during her life, and at her death to go to her children, share and share alike. I also give, devise, and bequeath to my said daughter, Carrie M. Crumley, absolutely and in fee simple my house and lot known as No. 475 Whitehall street, in the City of Atlanta, Ga., which said property is fully described in a deed made to me by Victor H. Kriegshaber, dated May 19, 1906. Also, the large portrait of myself and my large family Bible.

"Item 2. I give, devise, and bequeath to my daughter-in-law, Hettie R. Berry, my storehouse and lot known as No. 99 Peachtree street in the City of Atlanta, Ga., being the same property described in deed to me from McClure Realty Investment Company, dated March 12th, 1909. To have and to hold during her life, and at her death to go to her four children, share and share alike. If the indebtedness of forty thousand dollars principal, which is now owing on said property, has not been paid at the time of my death, I direct the executors of this will to pay same out of my estate. I give, devise, and bequeath to my said daughter-in-law, Hettie R. Berry, all the notes of indebtedness I hold against her two sons, Francis Rigdon Berry and Maxwell R. Berry; also the note which I hold against her. All of said notes amounting to about twenty-two thousand dollars.

"Item 3. I give, devise, and bequeath to my daughter, Mary Z. Scales, my storehouse and lot known as No. 10 Marietta street in the City of Atlanta, Ga., being one fourth of the lots known as Nos. 6, 8, 10, and 12 Marietta street in said city. To have and to hold during her life, and at her death to go to her children, share and share alike. I also give, devise, and bequeath to my said daughter, Mary Z. Scales, my set of Appleton's American Encyclopedia, and my marble-top table.

"Item 4. I give, devise, and bequeath to my daughter, Fannie A. Wright, my storehouse and lot known as No. 8 Marietta street in the City of Atlanta, Ga., being one fourth of the lots known as Nos. 6, 8, 10, and 12 Marietta street in said city. To have and to hold during her life, and at her death to go to her children, share and share alike. I also give, devise, and bequeath to my said daughter, Fannie A. Wright, absolutely and in fee simple, my lot on the corner of Peachtree and Sixteenth streets, which I have just recently purchased from J. B. Daniel, excepting one hundred (100) feet square at the east end of said lot. Also, my horse and buggy, and my largest old clock and mahogany rocking-chair.

"Item 5. I give, devise, and bequeath to my daughter, Maggie S. McBurney, my storehouse and lot known as No. 12 Marietta street, in the City of Atlanta, Ga., being one fourth of the lots known as Nos. 6, 8, 10, and 12 Marietta street in said city. To have and to hold during her life, but if she should leave no child or children, to go to her sisters, Carrie M. Crumley, Mary Z. Scales, and Fannie A. Wright, or their children, in three equal shares. Also, my old clock in my bedroom, and my bookcase which is now in the dining room.

[Items 6 to 11, inclusive, make bequests of money and articles of personal property to various legatees.]

"Item 12. I give, devise, and bequeath, absolutely in fee simple, all the balance of my property which I may own at the time of my death, both real and personal, and wherever located, in equal shares to my four daughters, Carrie M. Crumley, Mary Z. Scales, Fannie A. Wright, and Maggie S. McBurney. Should any of my said children die leaving child or children, such child or children shall take the share of their deceased parent."

Upon the hearing for an interlocutory injunction, the court passed the following order: "Upon hearing evidence and argument,

.the application for a temporary injunction is denied and the restraining order heretofore granted is hereby revoked ; the court being of the opinion that the daughters of M. R. Berry took fee-simple estate, and the plaintiffs having no interest in the property." To this order the plaintiffs excepted.

*Wimbish & Ellis,* for plaintiffs.

*John L. Hopkins & Sons,* for defendants.

HOLDEN, J. (After stating the facts.) The plaintiffs in error (who were the plaintiffs in the court below) are the children of three of the daughters referred to in the 12th item of the will. They contend that under this item they are contingent remaindermen, or executory devisees, with respect to the realty and personalty therein devised and bequeathed. The daughters of the testator, who are the defendants in error, and who were the defendants in the court below, claim that, by reason of their having survived the testator, they own the fee-simple title to the property devised in this item of the will. In the order passed by the trial judge, after denying the injunction, he states: "The court being of the opinion that the daughters of M. R. Berry [the testator] took fee-simple estate, and the plaintiffs having no interest in the property." Counsel for the defendants in their brief state "that if the children have any interest in the property, it should be recognized, declared, and protected by an injunction." The only question made before and passed on by the trial judge, and the only issue made here, is whether or not the plaintiffs have any interest in the property bequeathed in the 12th item of the will. That item is as follows: "Item 12. I give, devise, and bequeath, absolutely in fee simple, all the balance of my property which I may own at the time of my death, both real and personal, and wherever located, in equal shares to my four daughters, Carrie M. Crumley, Fannie A. Wright, and Maggie S. McBurney. Should any of my said children die leaving child or children, such child or children shall take the share of their deceased parent." The plaintiffs claim that under this item, if one of the daughters should die *at any time* leaving children, such children would take the share of the deceased parent. The defendants contend that this item of the will means that if one of the daughters should die before the death of the testator, leaving children, the latter should take the share of the deceased parent, but any daughter who survived the testator would take a fee-simple

estate, and the children of such daughter, by virtue of the will, would take no interest in the property upon her dying after the death of the testator and leaving children.

There are many decisions holding that where property is devised without limitation, and words are employed that "in case of death," or "in the event of death," or similar words importing death of the devisee, the property is to go to other named persons, the death referred to is one occurring prior to the death of the testator; for in such cases, death being certain and not referable to a collateral event, it must be concluded that the testator had in mind only death occurring prior to his own death. There are also many decisions construing items of wills wherein property is devised to one without limitation, followed by a provision that in the event of such party dying "without issue" it is to go to named persons. Some of these decisions hold that the death referred to is one in connection with some collateral event, and as such death without issue may happen at any time, such words are to be interpreted according to their ordinary meaning and as referring to the time of death of the first taker, whether occurring before or after the death of the testator, unless the contrary intention is plainly expressed in the will, or is necessary in order to carry out its undoubted purposes. Numerous other decisions construing provisions of like character hold that the death referred to is one occurring *only* before the death of the testator. In some of the decisions it is considered important, in determining the intention of the testator, whether the property passing under the will is realty or personalty; and in others, whether the language employed by the testator denoting a passage of title to the first taker is such as is usually employed to convey a fee-simple estate. Some of the authorities hold that in applying the rule that the contingency of dying "without issue," upon which happening a new devisee is to take after a previous devise in fee, means so dying in the lifetime of the testator, there is no different rule of construction when a fee is expressly given and when language is used from which one is presumed. For an elaborate collation of cases construing the period to which death is referable in connection with devises where there is an expression importing the contingency of dying without child, or issue, on which a gift over is limited, see the extended note to the case of Smith *v.* Smith, 157 Ala. 79 (47 So. 220, 25 L. R. A. (N. S.)

1045). We have referred to the divergent views taken by various courts merely to illustrate the difficulty which is experienced in arriving at the real intention of a testator when he employs language with reference to a contingency, and does not leave free from doubt the time at which he expected the contingency to operate and the indefeasible estate to become fixed. While the courts have used various arguments and applied sundry rules of law to uphold the conclusion reached by them in construing some particular will, no fixed guide can be followed, and each case must rest on its own peculiar facts in determining what disposition the testator really wished to make of his property. In cases like the one we are deciding, where language susceptible of more than one construction is used, the environment of the testator at the time the will was executed, all of its provisions and its general testamentary scheme, and every other legitimate fact and circumstance must be carefully considered, in connection with the several rules of law which are applicable, in an endeavor to so resolve the doubt as to effectuate the design which the testator desired to accomplish by the language he employed; and but little assistance can be gained from decisions made under the variant facts of other cases.

The record shows that the testator himself wrote the will in question, and that one of his daughters, "Mrs. McBurney, had no children, and Mr. Berry [the testator] did not think she would ever have any, as the marriage had been fruitless for a large number of years." Each of the other three daughters referred to in the 12th item of the will had children, who are the plaintiffs in this case. The record further shows that personalty as well as realty passed under this item. In the 5th item of the will the testator devised to Mrs. McBurney certain property "to have and to hold during her life, or, if she should leave no child or children, to go to her sisters, . . or their children, in three equal shares." In other items of his will he devised to each of the other three daughters certain property during her lifetime, and at her death to go to her children. After devising to Mrs. Crumley a certain lot, without stating anything further than that it was devised to her, the following language appears: "to have and to hold said property during her life, and at her death to her children, share and share alike." This sentence in the will is followed by one wherein the testator gave to Mrs. Crumley another lot "absolutely and in

fee simple," without stating that at her death this property was to
go to any one else. Another instance of this kind appears in de-
vising property to another daughter in item 4. By reference to the
items referred to, it will be seen that the testator employed language
technically accurate in creating life-estates and in creating estates in
fee simple, showing that the testator knew what language was needed
in order to create the two different kinds of estates. This fact is one
which should be given some consideration, in view of the language
used in the first sentence of item 12, where the testator states: "I
give, devise, and bequeath, absolutely in fee simple," the residuum of
his estate. Having in other items, in concise and clear language,
and employing technically correct expressions, created in specified
lots life-estates only, it would seem that in using the language above
quoted in item 12 he intended to give to his daughters, if they sur-
vived him, the fee-simple title to the residuum of his estate, and that
the language employed in the sentence immediately following the
one in which the above-quoted language appears meant that the
children of any deceased parent should take an interest in the
property only in the event that the parent died during the lifetime
of the testator, in which event such children were to take by way
of substitution the fee-simple title to the share which would other-
wise go to the parent if then in life. In support of this view, it is
also to be noted that in creating a life-estate in a daughter, the tes-
tator in each instance designated that the remainder was "at" her
death to go to her children, thus making an appropriate use of the
word "at" as a word relating to time. In making the provision con-
ditioned on death in item 12, the testator abandons the use of this
word and employs the word "should," which is not indicative of
time, but merely of contingency. The fact that the testator in item
12 did not say, "at the death of any of my said children," etc.,
which would have clearly indicated an intention to provide for a
gift over to take effect upon their death *at any time,* in view of the
fact that he had several times in the will made a prior use of such
expression with that intent, would seem to indicate a different
intent on his part when he so changed the form of his language, in
referring to death, as to express a contingency with respect to the
death of the same devisees, which could be as equally referable to a
death occurring prior as to one occurring subsequently to his own
death, and that such change was advisedly made with a view of

denoting the earlier period and to denominate substituted takers for the fee devised, should any daughter not be in life to take her share when the will took effect at his death. The construction that the testator intended the words expressing a contingency to relate to death occurring before the will took effect, in which event the children of the devisee so dying were, as substituted devisees, to take the parent's share, explains and renders consistent the designation of the estate given as being "absolutely in fee simple;" as under this construction any taker of a share, parent or child, would take it as designated, "absolutely in fee simple." On the other hand, to hold that the testator intended this contingency to operate at any time after his death would put him in the inconsistent position of absolutely giving to the first taker something which ultimately by the conditions of this same absolute gift might be absolutely taken away. The language above quoted from the first sentence of item 12, standing alone, would unquestionably give to the daughters named a fee to the property without any limitation or condition; and the absolute estate thereby apparently created is not to be cut down to a lesser estate by a subsequent provision, unless the intention to do so is clear. See *Kimbrough* v. *Smith,* 128 *Ga.* 690, 692 (58 S. E. 23). The law favors the vesting of estates at the earliest possible time; and where there are divesting clauses in a will, the law is disposed to give them such effect as to vest the estate indefeasibly at the earliest possible moment. Language doubtful in its meaning should not be construed to lessen the fee previously devised. *Thomas* v. *Owens,* 131 *Ga.* 248, 255 (62 S. E. 218); McClellan *v.* Mackenzie, 126 Fed. 701 (61 C. C. A. 619); Robinson *v.* Jones, 222 Pa. 56 (70 Atl. 948, 128 Am. St. R. 793). We reach the conclusion that it was the purpose of the testator to substitute grandchildren in lieu of parents, if parents died before he died, and the last sentence of item 12 of the will was merely to designate the persons who were to take in the event of the death of any of his daughters before his death. We therefore hold that the first sentence in item 12 of the will under review creates an absolute estate in fee, and the subsequent provision that should any of the devisees therein named "die leaving child or children, such child or children should take the share of their deceased parent," is not a limitation or lessening of the prior devise, but is alternative or substitutionary, and is to have effect only in the event of the first devisee dying be-

·fore the death of the testator.  In connection generally with the
subject herein discussed, see 30 Am. & Eng. Enc. Law, 708-711,
785; Rood on Wills, §§ 648-656; 2 Jarman on Wills, § 1564;
Schouler on Wills, § 565; Gardner on Wills, 512; 2 Williams on
Executors, § 1082; Moore v. Gary, 149 Ind. 51 (48 N. E. 630);
Quackenbosh v. Kingsland, 102 N. Y. 128 (6 N. E. 121, 55 Am. R.
771); Wills v. Wills, 85 Ky. 486 (3 S. W. 900); Smith v. Smith,
157 Ala. 79 (47 So. 220, 25 L. R. A. (N. S.) 1045, and note);
*Palmer* v. *Matthews, 33 Ga. Sup. 72; Sumpter* v. *Carter,* 115 *Ga.*
893 (42 S. E. 324, 60 L. R. A. 274); *Crossley* v. *Leslie,* 130 *Ga.*
782 (5), (61 S. E. 851).

The case of *Gibson* v. *Hardaway,* 68 *Ga.* 370, is cited by counsel
for the plaintiffs in error as supporting their contention that the
daughters of the testator in the present case took a defeasible fee
and not an absolute estate.  We do not think the decision in the
case cited is at all in conflict with the one rendered in the present
case.  In that case, in the item of the will construed by the court,
the testator, after stating, "I give and bequeath to my daughters,
Dora W. Hardaway and Martha Ophelia Hardaway" certain de-
scribed realty, and "I also give to each of my two daughters" cer-
tain personalty (and after making provision to make the share of
a son equal to the gift to the daughters); employed the following
language: "I give the above-named legacies to my daughters free
from the debts, liabilities, or control of any husband they may
have; and should either or both of my two daughters above named
die without child or children, then all the legacies given in this
item shall vest in and be considered as my estate."  The following
are some of the facts which distinguish that case from the one now
before us: There the testator's daughters were unmarried; hence the
possibility of their dying and leaving children must extend into the
future.  Here the daughters referred to were married, and all but
one had children; and the contingency of dying and leaving children
could occur in the immediate present.  There the testator did not
denominate in absolute terms the character of the estate devised;
here the testator declares that he gives the property "absolutely in
fee simple."  In the will construed in the *Gibson* case, the word
"then" was employed by the testator in referring to the contin-
gency of death of one or both of the devisees; and in the decision
rendered by the trial judge (which was quoted in full and was

approved in the opinion handed down by this court) great stress was laid on this word as being "an adverb of time" and denoting an intention on the part of the testator to make the reversion referred to effective according to whether or not at the death of one of the devisees, whenever occurring, child or children should *then* be left by such devisee. It further appears in that case, that, in upholding the decision of the lower court construing it to be the intention of the testator to create a defeasible fee, this court also gave consideration to the fact that such construction would maintain the legality of the will, whereas to give it the construction contended for by the plaintiff in error in that case would have compelled the court to impute to the testator an attempt to create an illegal estate.      *Judgment affirmed.   All the Justices concur.*