THORNQUIST *v.* OGLETHORPE LODGE NUMBER ONE, etc.

1. If two clauses of an item of a will are so inconsistent that both can not stand, the latter will prevail; but the whole item is to be taken together, and operation is to be given to every part of it, if this can be done without violating its terms or the intention of the testator. Such intention is to be sought by considering the item as a whole, rather than detached parts of it separately.

2. A testatrix devised and bequeathed her entire estate, after the payment of her debts, to her executors as trustees upon the following uses and trusts: "(a) To provide for my faithful friend and companion, the nurse of my son [naming him] to wit [naming her], while unmarried, such modest support as she has had while living with me; provided, however, that no more than one half of the income of my estate shall be devoted to this purpose. (b) To pay over to my son [naming him] during his natural life the balance of the net income from my estate, after providing therefrom for the support of said [nurse named]. (c) From and after the death of my said son, leaving him surviving a child or children, or the child or children of a deceased child, to pay his share of the net income of my estate for the maintenance and support of such child or children, or child or children of a deceased child, during the life of said [nurse], and at and after her death then in trust to convey said property to said surviving child or children of my said son [naming him], the child or children of a deceased child to stand in the place of their parent, and to take per stirpes and not per capita. (d) In the event of the death of my said son [naming him] without issue him surviving, then and in that event to pay the entire income from my estate to said [nurse named] during her lifetime, and from and after her death then in trust to convey my entire estate to" a certain lodge of the order of Odd Fellows, to be held, managed, and controlled by the trustees for the time being of such lodge, and the income to be applied to the support and relief of the needy widows and orphans of members of such lodge. The woman named as the faithful friend, companion, and nurse married, and her husband subsequently died. The son of the testatrix died without leaving issue. *Held,* that upon the marriage of the friend and nurse her interest in the estate terminated, and was not revived by the subsequent death of her husband; and upon the death thereafter of the son of the testatrix, without leaving descendants him surviving, the lodge of Odd Fellows became the sole legatee, for the purpose of carrying into effect the trust created for the widows and orphans of its members.

JULY 18, 1913.

Petition to construe will. Before Judge Charlton. Chatham superior court. August 16, 1912.

The will of Eliza Anne Bennett, which was admitted to record in common form in 1900, contained the following item: "Item Second: I give, devise, and bequeath unto my executors hereinafter named as trustees, and their successors, all and every part and parcel of my estate, real and personal, including all money, choses

in action, rights and credits belonging to me, after the payment of my just debts as hereinbefore provided, upon the following uses and trusts, that is to say: (*a*) To provide for my faithful friend and companion, the nurse of my son, George Wolfe Bennett, to wit, Missouri Thurman, while unmarried, such modest support as she has had while living with me, provided, however, that no more than one half of the income of my estate shall be devoted to this purpose. (*b*) To pay over to my said son, George Wolfe Bennett, during his natural life the balance of the net income from my estate, after providing therefrom for the support of said Missouri Thurman. (*c*) From and after the death of my said son, leaving him surviving a child or children, or the child or children of a deceased child, to pay his share of the net income of my estate to the maintenance and support of such child or children, or child or children of a deceased child, during the life of said Missouri Thurman, and at and after her death then in trust to convey said property to said surviving child or children of my said son George Wolfe, the child or children of a deceased child to stand in the place of their parent, and to take per stirpes and not per capita. (*d*) In the event of the death of my said son George Wolfe without issue him surviving, then in that event to pay the entire income from my estate to said Missouri Thurman during her lifetime, and from and after her death then in trust to convey my entire estate to Oglethorpe Lodge Number One, Independent Order of Odd Fellows, of Savannah, Georgia, to be held, managed, and controlled by the trustees for the time being of such lodge, the income thereof to be applied by them to the support and relief of the needy widows and orphans of members of said Lodge, in so far as the same may be necessary; and should there be any balance of income, such balance shall be invested by such trustees for the same uses and purposes. It is my will that the trustees for the time being of said Oglethorpe Lodge shall be the sole judges as to the widows and orphans who shall take the benefit of the support and relief provided for herein, and as to the amount thereof, and the continuance of the same. And I further authorize and empower such trustees for the time being, without the order of any court, at public or private sale, and on such terms as they may elect, to convey and dispose of any and all of my estate, the proceeds of such conveyance or disposal to be invested and held by them upon the uses and trusts hereinbefore set out."

Missouri Thurman married Thornquist, who later died, and she remained a widow. George Wolfe Bennett died without issue surviving him. The executors and trustees named in the will resigned, and Brooks became the administrator cum testamento annexo. The property subject to the terms of the item of the will above quoted consisted, at the time the litigation began, of about $475 in cash, and a lot of land of the approximate value of $1,000. Missouri Thornquist claimed that she was entitled to the entire income from such property. Oglethorpe Lodge Number One, Independent Order of Odd Fellows, of Savannah, Georgia, contended that, Missouri Thurman having married, it was entitled to the entire income from the property, and also to have a conveyance of the property, to be held by it upon the trusts set forth in the second item of the will. The administrator being unwilling to pay over to either of these parties the income from the property until their conflicting claims were settled, Missouri Thornquist filed an equitable petition for the purpose of obtaining a construction of the will and determining her rights. The presiding judge construed the item of the will above quoted in favor of the defendant, Oglethorpe Lodge Number One. Mrs. Thornquist excepted.

*George H. Richter,* for plaintiff in error.

*Wilson & Rogers,* contra.

LUMPKIN, J. A testator died leaving a will, the second item of which is set out in the statement of facts. Missouri Thurman, who was mentioned as a beneficiary under subsections (*a*) and (*d*) of that item of the will, married, but afterward became a widow. The son of the testatrix mentioned in the will has died without leaving issue surviving him. Missouri Thornquist (formerly Missouri Thurman) claims that she is entitled to the entire income from the property, while Oglethorpe Lodge No. 1, Independent Order of Odd Fellows, of Savannah, contends that, Missouri Thurman having married, it is entitled to the entire income from the property, and also to have a conveyance of the same made to it, upon the trusts set forth in the will.

Counsel for the plaintiff in error argued that it was the intention of the testatrix to provide for Missouri Thurman, her faithful friend and companion, during such time as the latter was unmarried, whether before she married or during widowhood, and that the words "while unmarried," were not words of limitation

under which the beneficiary lost her interest by marriage. He further contended that, if this were not correct, nevertheless there were two testamentary schemes included in the second item of the will, one embraced in the first part of the item, and the other embraced in subdivision (*d*) thereof; and that the preceding divisions might be entirely eliminated from this item and leave the last-mentioned provision to stand alone. He further argued, that, if it should be held that there was merit in the contention that the words "while unmarried" constituted a limitation, there was an irreconcilable conflict between the anterior and posterior provisions of the item, and that in such a case the latter would prevail. On behalf of the defendant in error it was contended, that the second item of the will should be construed as a consistent whole, and that the clauses should not be construed as inconsistent, if this could be avoided; and that, so construed, the provision made for Missouri Thurman (afterwards Missouri Thornquist) terminated upon her marriage, and did not revive upon the death of her husband, or upon the death of the son of the testatrix without issue surviving him.

It is rudimentary law that in the construction of wills the court will seek diligently for the intention of the testator, and will give effect to it as far as it may be consistent with the rules of law. Civil Code, § 3900. It is well settled that "If two clauses of a will are so inconsistent that both can not stand, the later will prevail; but the whole will is to be taken together, and operation is to be given every part of it, if this can be done without violating its terms or the intention of the testator. And the intention of the testator is to be sought by looking to the whole will rather than to detached parts of it." *Rogers* v. *Highnote,* 126 *Ga.* 740 (56 S. E. 93). In *Kimbrough* v. *Smith,* 128 *Ga.* 692 (58 S. E. 23), Mr. Justice Evans said: "Before a posterior provision shall be given the effect of nullifying a devise previously made in the will, the conflict between the two provisions must be irreconcilable." See also 40 Cyc. 1413.

In the light of these rules let us examine the provisions of the second item of the will here involved. The testatrix included several subdivisions marked by letters under the same item, thus indicating that they were considered to be closely related, and as forming together such a single purpose as to be included in one item

rather than such separate and distinct testamentary schemes or legacies as to be divided into separate items. We think that item second presents a single testamentary scheme with certain subdivisions thereof, rather than distinct and conflicting testamentary schemes. In that item the first thought presented by the testatrix was to make provision for the benefit of her friend and companion, Missouri Thurman, "while unmarried." At that time the beneficiary was unmarried, and these words evidently mean while or so long as she remained in that condition. 2 Bl. Com. *155. The testatrix could hardly have intended that the beneficiary might first take under the will, and then by marriage cease to be a beneficiary, and then again become a beneficiary by the death or divorce of her husband. The legacy was not of that elusive a character which might be subject to the description, "now you see it and now you don't." It might have been that the woman for whom the testatrix was providing would need more assistance if she married and had a large family than if she remained unmarried; or the same thing might have been true if perchance marriage with her had proved a failure; but it was evidently not the testamentary purpose to provide for her according to what she might need in such circumstances, but to make provision for her benefit so long as she did not see fit to marry. Upon her marriage the provision under subsection (a) terminated, and the beneficiary could not alternately take and not take under the will, according as she might marry, become a widow or a divorcee, and remarry. Later in the item the testatrix made provision for her son to receive "the balance of the net income from my estate, after providing therefrom for the support of said Missouri Thurman." She thus contemplated that a part of the income, not exceeding one half thereof, should be devoted to the support of Missouri Thurman, while unmarried, and that the residue of the income should be paid to the son. By subdivision (d) it was provided that in the event of the death of the son of the testatrix, without issue him surviving, the executors should pay the entire income from the estate to said Missouri Thurman during her lifetime. Having provided that Missouri Thurman should receive less than the entire income while she should remain unmarried, and that the son of the testatrix should receive the balance, subdivision (d) then provided that, in the event of the death of her son without leaving issue, "the entire income" should

be paid to Missouri Thurman. In other words, having provided for a part to be used for the benefit of Missouri Thurman while she remained unmarried, the testatrix then provided for the balance of the income, which would be going to her son, to be added to that which would be used for Missouri Thurman, thus paying the entire income to the latter. The testatrix contemplated that Miss Thurman should then be receiving some of the income, which, upon a contingency, would be increased so as to include the whole of it. This was not an independent or conflicting testamentary scheme, destroying that which had preceded it in the same item; but it should be construed in harmony with that which had preceded it. As we have seen that the provision for Missouri Thurman made in the first part of this item terminated upon her marriage, so also the addition thereto made in the latter part of the same item terminated upon the same event. Thus this legatee remained an object of the bounty of the testatrix so long as she did not marry; but when she married, this terminated the provision made for her in the will, and the legacy did not revive by reason of the death of her husband. The death of the husband did not reproduce life in the legacy.

Upon careful consideration of the second item of the will, we hold that the trial judge correctly construed it, that after the marriage of Missouri Thurman she no longer took any interest thereunder, and that after the death of the son of the testatrix, leaving no issue surviving him, the Oglethorpe Lodge No. 1 became the sole legatee for the purpose of carrying out the trust created in its favor.            *Judgment affirmed. All the Justices concur.*