## MOORE v. COOK et al.

1. In construing wills words of survivorship refer to the death of the testator, in order to vest remainders in fee indefeasibly, unless a manifest intention to the contrary appears.

2. Where there are divesting clauses in a will, the law is disposed to give them such effect as to vest the estate indefeasibly at the earliest possible moment; and language doubtful in its meaning should not be construed to lessen the fee previously devised.

3. Where a testator devised to his wife certain lands " to be hers during her natural life or widowhood," and then provided that ' the above-bequeathed property . . at her death or second marriage go to my daughter, Katie C. Moore, if living, and if not living, to go to . . J. E. Moore and Belle Moore," the words of survivorship therein referred to the death of the testator; and when the daughter survived the testator, a fee in remainder indefeasibly vested in the daughter.

4. Where a testator gave and bequeathed to his " daughter, Katie C. Moore, the residue of [his] estate, consisting of land, money, notes, accounts, mortgage, stocks, bonds, and gold watch and chain, also one piano — also my insurance policy on New York Life Company," this devise created an estate in fee in the daughter; and the same was not cut down to a defeasible fee where a subsequent item of his will provided that all property which he had bequeathed to his daughter should revert in full title to J. E. and Belle Moore, and that if his daughter should die before he did, leaving no heirs of her body, the property so devised to his daughter should go to J. E. Moore and Belle Moore at his death.

No. 2917. JULY 15, 1922.

Construction of will. Before Judge Summerall. Coffee superior court. October 13, 1921. (See 151 Ga. 523.)

John Henry Poole, for plaintiff in error.

Winfield Payne Jones, F. Willis Dart, and McDonald & Willingham, contra.

HINES, J. In item two of his will the testator devised to his wife, Mary E. Moore, " to be hers during her natural life or widowhood," certain described lands, and five hundred dollars in money. Then follows this provision: " The above-bequeathed property and money at the death of said Mary E. Moore, at her death or second marriage to go to my daughter, Katie C. Moore, if living, and if not living, to go to the heirs of J. S. Moore, to wit, J. E. Moore and Belle Moore." The court below held that this devise gave to the daughter an indefeasible estate in remainder in fee simple, as this daughter survived the testator. We think that the court properly construed this provision of the will.

The law favors the vesting of remainders in all cases of doubt. In construing wills, words of survivorship refer to the death of

testator, in order to vest remainders, unless a manifest intention to the contrary appears. Civil Code, § 3680. So the law favors the vesting of estates indefeasibly; " and where there are divesting clauses in a will, the law is disposed to give them such effect as to vest the estate indefeasibly at the earliest possible moment. Language doubtful in its meaning should not be construed to lessen the fee previously devised." *Crumley* v. *Scales,* 135 *Ga.* 300 (69 S. E. 531). Where no special intent is manifested to the contrary, words of survivorship will have reference to the time of the death of the testator, and not to the time of the death of the life-tenant. *Vickers* v. *Stone,* 4 *Ga.* 461, 464; *Speer* v. *Roach,* 145 *Ga.* 852, 854 (90 S. E. 57).

In the second item of this will the property which the testator bequeathed to his wife was to go at her death or second marriage to his daughter, Katie C. Moore, " if living, and if not living, to go to " J. E. Moore and Belle Moore. To what period does the language, " if living, and if not living," refer, the death of the testator or the death of the life-tenant? Under the above rule these words of survivorship refer to the death of the testator. If Katie C. Moore was living at that time, she took an absolute fee-simple estate in remainder. If she was not living at the time of the death of the testator, then J. E. Moore and Belle Moore were to take the estate absolutely in fee in remainder. In other words, if his daughter was not living at his death, the testator substituted J. E. Moore and Belle Moore as legatees in her place. So construing this item of this will, Katie C. Moore, if living at the death of her father, took an absolute, indefeasible estate in remainder; which would not be defeated by her death after the death of her father. Nothing in *Patterson* v. *Patterson,* 147 *Ga.* 44 (92 S. E. 882), *Nottingham* v. *McKelvey,* 149 *Ga.* 463 (100 S. E. 371), *Gibson* v. *Hardaway,* 68 *Ga.* 370, *Ewing* v. *Shropshire,* 80 *Ga.* 374 (7 S. E. 554), and *Brown* v. *Lane,* 147 *Ga.* 1 (92 S. E. 517), conflicts with this construction of the will. In *Patterson* v. *Patterson,* the testator provided that his wife should reside on and have a life-interest in his homestead, and at her death he wished his homestead to be the property of his daughter, Mary Jane Patterson. Then follows this provision: " If the said Mary Jane Patterson should die without child or children, *then* the property or the proceeds of the same to be the property of my son, David W.

Patterson, or, in the case of his death, the property of his children." Here the words of survivorship referred to the death of the tenant in remainder. The use of the word "then" clearly indicates that a fee-simple estate was vested in the daughter, subject to be divested if she died without child or children.

In *Nottingham* v. *McKelvey,* the testator gave to his nephews certain land. By a codicil, executed the same day the will was executed, he added this provision: "I will and desire that if my two nephews," to whom he had given these lands, "should die without heirs of their body, *then* . . all my property that is willed and given to them go and be the property of" other named persons. Here the words of survivorship clearly indicated that they referred to the death of these legatees; and that if they died without heirs of their body, then the estate was to go to the other named persons. The use of the word "then," clearly indicates that the testator meant that the fee vested in his nephews would be divested when they died without heirs. In *Gibson* v. *Hardaway,* the word "then" was used; and this court held it was an adverb of time, and referred to the death of the daughters. This court said: "But the natural, plain, simple construction is that the 'then' used here is an adverb of time, and means at the death of the daughters." In *Crumley* v. *Scales,* supra, this court in referring to the last-mentioned case said: "In the will construed in the *Gibson* case, the word 'then' was employed by the testator in referring to the contingency of death of one or both of the devisees; and in the decision rendered by the trial judge (which was quoted in full and was approved in the opinion handed down by this court) great stress was laid on this word as being 'an adverb of time,' and denoting an intention on the part of the testator to make the reversion referred to effective according to whether or not at the death of one of the devisees, whenever occurring, child or children should *then* be left by such devisee." In the will which we are now construing no such word is used. In *Ewing* v. *Shropshire,* the construction of a deed of gift was involved; and the decision therein has no bearing upon the case at bar. In *Brown* v. *Lane,* the testator devised property to certain children, with the provision that "should either of my children die after receiving their portion of my estate, and leave no heir, in that case the property rec'd from my estate must be returned to be divided between

my other children." Here the estate was to revert to be divided between the testator's other children, if any of them should " die after receiving their portion of my [his] estate," which showed that the testator necessarily contemplated the death of the children after he had died and they had received their legacies. In *Curles* v. *Wade,* 151 *Ga.* 142 (106 S. E. 1), the testator devised land to his son, directing that the same " belong and the title vest in my son . . immediately after my death; but if he should die without a child or children, then in that case the above-described property · be divided equally among my nieces and nephews." Here the court held that the language, " then in that case," referred to the death of the children, and not to that of the testator; and Justice Gilbert cited many cases in support of the doctrine that this item created a qualified or base fee in the son, defeasible on his dying without a child or children. *Belt* v. *Gay,* 142 *Ga.* 366 (82 S. E. 1071). But in the case at bar there is no language from which we can infer that the testator meant to create a qualified fee in his daughter, defeasible by her death, if she survived the testator; and under the well-established rule to which we have referred above, the words of survivorship in the will which we are construing referred to the death of the testator.

In the fourth item the testator gave and bequeathed to his " daughter, Katie C. Moore, the residue of my [his] estate, consisting of land, money, notes, accounts, mortgage, stocks, bonds, and gold watch and chain, also one piano — also my [his] insurance policy on New York Life Company." Standing alone this item gives to the daughter an indefeasible estate in fee simple. About this there can be no serious contention. But are the indefeasible fees created by the second and fourth items of this will cut down into defeasible fees by the fifth item thereof? That item is: " My will is that if my daughter Katie C. Moore should die without leaving an heir of her body, that all property I have bequeathed to her shall revert in full title to J. E. Moore and Belle Moore, heirs of my brother J. S. Moore; and I hereby will that if my daughter Katie C. Moore should die before I do, leaving no heirs of her body, that above bequeath to Katie C. Moore shall go to said J. E. Moore and Belle Moore at my death."

An express devise of lands can not be cut down by a subsequent item of doubtful meaning; and an estate granted in plain and un-

equivocal language in one item of a will can not be lessened or cut down by a subsequent item, unless the language therein is as clear, plain, and unequivocal as that in the former item. 28 R. C. L. 206, § 243; 30 Am. & Eng. Enc. Law (2d ed.), 687; 1 Jarman on Wills, *438. This court has adopted this canon of construction. *Smith* v. *Slade,* 151 *Ga.* 176 (106 S. E. 106). In *Kimbrough* v. *Smith,* 128 *Ga.* 690, 692 (58 S. E. 23), Justice Evans said: "When the words of the will in the first instance distinctly indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provision which is inferential, and which is not equally as distinct as the former." In *Crumley* v. *Scales,* supra, the same doctrine is applied. In *Wilcher* v. *Walker,* 144 *Ga.* 526, 529 (87 S. E. 671), Justice Lumpkin said: "*Crumley* v. *Scales,* 135 *Ga.* 300 (69 S. E. 531), is quite similar to the case under consideration. There the rule that an absolute estate created by one part of a will will not be cut down to a lesser estate by a subsequent part unless the intention to do so is clear was invoked."

In view of these decisions it must be admitted that this rule of construction is now settled in this State. If so, it follows that if item 5 of this will is of doubtful meaning, then the absolute, indefeasible estates given by the testator to his daughter in items 2 and 4 of this will can not be cut down to defeasible estates by item 5.

To what period does the death of Katie C. Moore refer under the language used in item 5 of this will? This item provides that "if my daughter Katie C. Moore should die without leaving an heir of her body," all property bequeathed to her "shall revert in full title to J. E. Moore and Belle Moore." When must she die for this to take place, and for J. E. Moore and Belle Moore to be substituted in her place as legatees of the property given her in items 2 and 4 of the will? . The testator does not say that at the death of his daughter this property shall go to the Moores. Under the familiar rule that words of survivorship refer to the death of the testator, the language of this item means that if Katie C. Moore should die before the testator died, then he substituted J. E. Moore and Belle Moore as legatees in her place. Item 5 contains the further provision: "I hereby will that if my daughter Katie C. Moore should die before I do, leaving no heirs of her body, that above bequeath to Katie C. Moore shall go to said

J. E. Moore and Belle Moore *at my death."* In the first part of this item it is provided that if the daughter should die without leaving an heir of her body, all property bequeathed to her shall revert to the substituted legatees; and to make plain what he meant by this the testator said further: " If my daughter, Katie C. Moore, should die before I do, leaving no heirs of her body," the property given to her should go " at my [his] death." The property could not go to the substituted legatees at the death of the testator, if the daughter did not die prior to his decease. It is thus rendered indisputable that the testator contemplated the death of his daughter without heirs prior to his death, as a condition upon which the substituted legatees take the estates granted to his daughter under items 2 and 4 of his will.

*Judgment affirmed. All the Justices concur, except*

BECK, P. J., dissenting. The last will and testament of Edward H. Moore contained, among others, certain provisions which were for construction under an equitable petition brought to the superior court for that purpose. In item 2 of the will the testator devised to his wife, Mary E. Moore, " to be hers during her natural life or widowhood," certain described real estate, consisting of various tracts and lots of land and an undivided interest in certain realty described in said item, together with $500 in money. This item concludes: " The above-bequeathed property and money at the death of said Mary E. Moore, at her death or second marriage to go to my daughter, Katie C. Moore, if living, and if not living, to go to the heirs of J. S. Moore, to wit, J. E. Moore and Belle Moore." Mrs. Katie C. Cook (née Moore), the daughter of the testator, filed a petition against the executrix, Mrs. Mary E. Moore, and against J. E. Moore and Belle Moore (Burch), in which she insisted that under item 2 of this will she has an absolute, indefeasible interest in the remainder interest of the real estate described therein, and that her interest in the remainder became indefeasibly vested upon the death of the testator; and the construction of item 2 thus insisted upon was adopted by the court in the final judgment and decree. Plaintiff in error, J. E. Moore, insists that this was an erroneous construction, in view of the language of the item itself and the language of item 5, which will be set forth later. And this contention seems to me to be sound. In my opinion, the item under consideration gave to Mrs. Mary E.

Moore a life-estate and to the daughter, Katie C. Moore (now Katie C. Cook) a vested-remainder interest, liable to be divested in case the remainderman should die before the life-tenant. "A vested remainder is one limited to a certain person at a certain time or upon the happening of a necessary event." The remainder here is limited to a certain person upon the happening of a necessary event, that is, the death of the wife of the testator. The fact that the estate might fall in sooner upon the happening of a contingency, that is, the second marriage of the widow of the testator, did not change the character of the remainder. In the case of *Patterson* v. *Patterson,* 147 *Ga.* 44, one item of the will under consideration read as follows: " I will that my wife, Margaret Patterson, reside on and have a lifetime interest in my homestead; . . and at her death I wish the homestead on which I now live to be the property of my daughter, Mary Jane Patterson. If the said Mary Jane Patterson should die without child or children, then the property or the proceeds of the same to be the property of my son, David W. Patterson, or, in case of his death, the property of his children." In construing this item of the will this court said: " If the will had merely provided that the widow of the testator should have a life-estate, with remainder to the daughter, Mary Jane, and after her death, in case she should die childless, remainder to D. W. Patterson, then the words of survivorship would have been construed to refer to the death of the testator. But construing the language of the item of the will under consideration, providing that at the death of the testator's widow the land was to be the property of his daughter, Mary Jane, and that if she ' should die without child or children, then the property to be the property of my [testator's] son,' etc., the time at which the remainder became absolutely vested was the death of the widow of the testator." In the case of *Nottingham* v. *McKelvey,* 149 *Ga.* 463, it was said: " A will declared: ' I give and bequeath to my nephew, Willie H. Stubbs, the two-thirds interest in all the land that was deeded to me by my father on the 23rd day of June, 1873, to have and to hold the same in fee simple. . . I give and bequeath to my nephew, Alpheus B. Stubbs, the remaining one-third interest in the land deeded to me by my father on the 23rd day of June, 1873.' By a codicil, executed on the same day the will was executed, it was provided: ' I will and desire that if my

two nephews, Willie H. Stubbs and Alpheus B. Stubbs, should die without heirs of their body, then that all my property that is willed and given to them go and be the property of [other named persons], to them and their heirs, forever, in fee simple.' *Held:* The words in the above items of the will and codicil give the land to the above-named nephews of the testatrix in fee simple, defeasible upon their dying without child or children, although such nephews survived the testatrix. Civil Code, § 3662; *Gibson* v. *Hardaway*, 68 *Ga.* 370; *Ewing* v. *Shropshire*, 80 *Ga.* 374 (7 S. E. 554); *Brown* v. *Lane*, 147 *Ga.* 1 (92 S. E. 517)." This is the conclusion which I have reached from the language of item 2 standing alone, while plaintiff in error insists that this is the proper construction in the light of the language used in items 4 and 5.

Items 4 and 5 of the will read as follows: "Item four. I give and bequeath to my daughter, Katie C. Moore, the residue of my estate, consisting of land, money, notes, accounts, mortgage, stocks, bonds, and gold watch and chain, also one piano — also my insurance policy on New York Life Company. Item five. My will is that if my daughter Katie C. Moore should die without leaving an heir of her body that all property I have bequeathed to her shall revert in full title to J. E. Moore and Belle Moore heirs of my brother J. S. Moore and I hereby will that if my daughter Katie C. Moore should die before I do leaving no heirs of her body that above bequeath to Katie C. Moore shall go to said J. E. Moore and Belle Moore at my death." The first part of item 5 strengthens us in the conclusion that the construction given to item 2 is correct, that being the part wherein it is provided that should testator's daughter die without leaving an heir of her body, the property bequeathed to her should revert in full to J. E. Moore. This part of item 5 does not have the effect to change the provisions of item 2, but makes that item clearer. But the following part of item 5 is more difficult to construe; that is, the clause providing that if the daughter should die "before I do, leaving no heirs of her body, that above-bequeath to Katie C. Moore shall go to said J. E. Moore and Belle Moore at my death." In fact, it would be impossible to give the entire item 5 a satisfactory construction independently of item 4 and item 2. But the intention — and that, when it can be arrived at, is to control, under the cardinal rule of construction of wills — is made manifest. Item

5 consists, apparently, of one sentence, and contains no punctuation marks whatever; but I call that part of the sentence to and including the word " J. S. Moore " the first half, and the part beginning " and I hereby will " as the second half. Construing item 2 as we have, that is, holding that it gives a vested remainder to Katie C. Moore, defeasible upon her dying before the life-tenant without issue, and holding that that construction is not changed by item 5, but rather confirmed by it, then the second part of item 5 is made intelligible; and the conflict between the second part and the other portion of the will is removed by construing it to refer to item 4. In its terms it refers to the " above bequeath." The expression " above bequeath [bequest] " could refer to item 2 as well as item 4; but for two reasons we restrict its applicability to item 4. The word " above " or " said " more naturally refers to the provision immediately preceding such word of reference; but especially is it made applicable only to item 4 by the provision that if the daughter, Katie, should die before the testator, the property should go to J. E. Moore and Belle Moore. Then it would be in direct conflict with item 2, which gives a life-estate to the wife, if we should seek to apply it to item 2. But it is not in conflict with item 4, which gives the property therein referred to absolutely to the daughter, no prior estate having been carved out of it. We think, therefore, that item 5 should be so construed as to make the first part of it refer to the property devised in item 2, and the second part of it, beginning with the words, " I hereby will," etc., apply to item 4. Of course, it might be said in reference to the first part of item 5, as we have remarked in regard to the second part thereof, that it might be construed to refer to both items 2 and 4. But giving it such construction as to make it refer only to item 2, it harmonizes with the construction above given the latter item and strengthens it, while the other construction would not.

I think, therefore, that the court erred in holding that under the item quoted above the defendant in error took an absolute, indefeasible title in fee simple to the property described in item 2, but properly held that under items 4 and 5 the defendant in error, upon the death of the testator, took an absolute, indefeasible title to the property described in item 4.