BARKER v. HAUNSON, executor, et al.

No. 8292. FEBRUARY 25, 1932.

494

498 .

*Robert S. Sams* and *Colquitt, Parker, Troutman & Arkwright,* for plaintiff.

*Howell, Heyman & Bolding,* for defendants.

ATKINSON, J. In *Rogers* v. *Highnote,* 126 *Ga.* 740 (56 S. E. 93), it was said: "If two clauses of a will are so inconsistent that both can not stand, the later will prevail; but the whole will is to be taken together, and operation is to be given every part of it, if this can be done without violating its terms or the intention of the testator. And the intention of the testator is to be sought by looking to the whole will rather than to detached parts of it." The same principle was thus stated in *Thornquist* v. *Oglethorpe Lodge,* 140 *Ga.* 297 (78 S. E. 1086) : "If two clauses of an item of a will are so inconsistent that both can not stand, the latter will prevail; but the whole item is to be taken together, and operation is to be given to every part of it, if this can be done without violating its terms or the intention of the testator. Such intention is to be sought by considering the item as a whole, rather than detached parts of it separately." Where there is a will and a codicil, both instruments will be considered, and the intention of the testator as expressed in them given effect. Another principle that has been ruled by this court is thus stated in *Smith* v. *Slade,* 151 *Ga.* 176(2) (106 S. E. 106) : "The general rule is that courts will not by construction reduce an estate once devised absolutely in fee, by limitations contained in subsequent parts of the will, unless the intention to limit the devise is clearly and unmistakably manifest. *Thomas* v. *Owens,* 131 *Ga.* 255 (62 S. E. 218). See *Crumley* v. *Scales,* 135 *Ga.* 300, 308 (69 S. E. 531) ; *Kimbrough* v. *Smith,* 128 *Ga.* 690, 692 (58 S. E. 23)." In *Kimbrough* v. *Smith,* cited above, it was said by Evans, J. "The Civil Code, § 3346 [Code

1910, § 3922] provides that 'Where there are inconsistent provisions in the same will, the latter must prevail.' Before a posterior provision shall be given the effect of nullifying a devise previously made in the will, the conflict between the two provisions must be irreconcilable. A subsequent provision which diminishes a precedent gift, as by cutting down to a life-estate a prior devise, is not so far conflicting and irreconcilable with that gift as to be, in a legal sense, repugnant thereto. *Broach* v. *Kitchens*, 23 *Ga*. 515; *Sheftall* v. *Roberts*, 30 *Ga*. 453; *Vaughn* v. *Howard*, 75 *Ga*. 285. In these cases the language of the posterior clause reducing the estate was in express terms, and not in general language. When the words of the will in the first instance distinctly indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provision which is inferential, and which is not equally as distinct as the former. 30 Am. & Eng. Enc. L. (2d ed.) 687; 1 Jarman on Wills, *438. The reason underlying this principle is equally applicable to the converse of the proposition, to wit: that where the prior devise of an estate less than a fee is made in distinct terms, it will not be enlarged into a fee by the general language of a subsequent item, unless the language and general context clearly and unmistakably discloses such to be the testator's purpose and intent. It is familiar law that the whole will is to be taken together, and operation to be given to every part of it, if possible, and no part should ever be rejected because of conflict with another part, except where the repugnancy is so palpable that both items can not be given effect." In *Thomas* v. *Owens*, 131 *Ga*. 248 (supra), the question was whether a devise of an absolute estate to Mrs. Thomas to an undivided interest, by item 3 of the will of the testatrix, was reduced by a codicil which bequeathed to Mrs. Thomas "the income from my estate during her life." It was said by this court: "The testatrix made her will and thereafter executed a codicil. It is an established rule not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil. 1 Jarman on Wills, § 139. . . In ascertaining the testamentary scheme it is well to first consider the terms of the will before the execution of the codicil. It is clear that the original dispositive scheme was to devise one half of the residuum of her estate to her sister, Mrs. Margaret W. Thomas. The language employed to express this intent is plain

and accurate to the point of technical precision. . . The devise in the codicil to Mrs. Thomas of a life-estate in all of the property of the testatrix clearly carves a life-estate for her out of the devises to the other devisees; and it becomes necessary to inquire what effect this provision of the codicil has on the devise to Mrs. Thomas in fee as made in the will. Was her estate in fee cut down to an estate for life? The rule is elementary that a court will not by construction reduce an estate once devised absolutely in fee by limitations contained in subsequent parts of the will, unless the intent to limit the devise is clearly and unmistakably manifested. If the expression relied upon to limit a fee once devised be doubtful, the doubt should be resolved in favor of the absolute estate. *West* v. *Randle,* 79 *Ga.* 28 (3 S. E. 454); McClellan v. MacKenzie, 126 Fed. 703 (61 C. C. A. 619). When the testatrix bequeathed the entire income of her estate to Mrs. Thomas for life, it would seem that the only purpose could have been to enlarge her benefaction to Mrs. Thomas; that in addition to the devises to her in fee simple she should receive for life the entire income of the property devised to other legatees. This is obliged to be so; because there is nothing in the codicil indicative of an intent to disturb the fee devised to Mrs. Thomas, and because no attempt is made to dispose of the property devised in fee to Mrs. Thomas after her death." In *Egleston* v. *Trust Co.,* 147 *Ga.* 154 (93 S. E. 84, 3 A. L. R. 295), it was said, in part: "Among all rules for the construction of wills, none are so vital, so absolutely essential, to the principles of right and justice as that the intention of the testator must prevail. This rule applies with equal force in construing the codicil, since the will and the codicil must be construed together. The same rule must guide in determining whether there is a revocation. It is a general principle to construe a codicil so as to interfere as little as may be with the dispositions in the will. Hawkins on Wills, 9, and authorities cited. It is also a general rule that the provisions of a will are not revoked by a codicil, the language of which is capable of any other reasonable construction, or is less clear and certain than that used in the will. Thompson on Wills, § 463; Page on Wills, 299; Jarman on Wills (American ed.), 343; Hawkins on Wills (2d ed.), 9." See also Estate of Sigel v. Schudt, 213 Pa. 14 (62 Atl. 175, 1 L. R. A. (N. S.) 397), 110 Am. St. R. 515); 28 R. C. L. 241, § 206. In the instant

502

case the paper executed as a will in 1919 was revoked. The question for decision relates to construction of the will of 1923, and the codicil thereto, duly probated as the last will and testament of the testatrix. Item 3 is entirely clear and unambiguous. It simply bequeathed to Novatus Barker Jr. "one half of $4000 cash, now on deposit in the Atlanta National Bank." This was a specific legacy, relating to an existing fund. The testamentary disposition of the other half of the fund was to Mrs. Williams under the residuary clause expressed in subparagraph (c) of item 6, bequeathing "all of my personal property (except my piano), and the residue of all property not specially enumerated or given elsewhere by this will." If the testatrix had died while the status was as existed at the date of the will, Barker and Mrs. Williams would undoubtedly have shared the fund equally. In item 5 two lots on McDaniel Street were devised to Barker and by item 6 one lot on McDaniel Street and testatrix's equity in 131 Peeples Street were devised to Mrs. Williams. It was also provided that if said lot should be fully paid for at testatrix's death it should go to Mrs. Williams in "fee simple." Approximately five months after execution of the will the testatrix decided to use the fund mentioned in item 3 to pay off the remaining purchase-money notes for the lot No. 131 Peeples Street and obtain a deed. Such use of the fund would operate to the advantage of Mrs. Williams as recipient of that lot, and leave nothing upon which the legacy to Barker under item 3 could operate. Such fund would be absorbed by or diverted into lot 131. So, in anticipation of such use of the fund and the results, the testatrix made on the back of the will the codicil which declares: "I have considered it best to withdraw the $4000 above mentioned in my will, stop interest on notes, and keep my property in repair. At my death, if this amount is not restored to him in some savings bank, I then desire house and lot at 131 Peeples Street be sold and the $4000 restored to him. Should I have any money outside of this $4000 after my personal expenses be paid, I wish it equally divided between Mrs. Williams or her heirs and Novatus L. Barker Jr. In event that Novatus L. Barker dies without wife or children, all his interest in my estate shall go to my daughter, Mrs. Ephie A. Williams, or her heirs." The language "restored to him in some savings bank" and "restored to him," as employed in this codicil, considered with

the context, refers to restoration of property bequeathed to Barker by item 3 of the will and contemplates restoration of the status of the fund as it existed at the time of the will, rather than a new bequest that would enlarge the amount given to Barker from such fund and take from Mrs. Williams the portion thereof that would go to her as residuary legatee under subsection (c) of item 6 of the will. If Barker's interest in the fund should be diverted into said lot 131 that was devised to Mrs. Williams, it would be just to restore that by making it a charge upon that lot. It may be inferred from the language of the codicil that the testatrix considered all of that, and contemplated restoration of the fund before her death; but that if it was not fully restored, any deficiency should be made up from proceeds of the sale of the lot on Peeples Street, into which the diverted fund had been invested. The devise of that lot to Mrs. Williams was in effect charged with payment of the above-mentioned deficiency, if any should exist at the death of the testatrix; but the creation of such a charge does not of itself, or in connection with other portions of the will and codicil, manifest a clear intention upon the part of the testatrix to revoke the interest in the $4000 which would have gone to Mrs. Williams as residuary legatee under the original will of which the codicil was a part.  *Judgment affirmed. All the Justices concur.*